BRADY & EDMONDSON, et al. v. JOHN L. LAMBERT, et al.

Eastern Section. March 3, 1928.

Petition for Certiorari denied by Supreme Court, June 16, 1928.

Cates, Smith, Tate & .Long, of Knoxville, and T. C. Drinnen, of Maryville, for appellant.

Brown & Johnson, and Gamble, Crawford & Goddard, of Maryville, for appellee.

OWEN, J.   The original bill in this cause was filed in 1915, by certain creditors of J. L. Lambert against J. L. Lambert and the Bank of Maryville, Maryville College and James A. Goddard, who, it was alleged, held certain mortgages on the lands of J. L. Lambert. The bill was sustained as a general creditor's bill.   The Clerk and Master was appointed receiver.   Later he declined to act as such receiver, and resigned, and Judge Sam Johnson, a member of the Maryville bar, was appointed receiver.   The defendant J. L. Lambert cooperated with the receiver, and it appears that Lambert was permitted to retain his property; by his endeavors and the endeavors of the receiver a sufficient amount was realized to pay his unsecured creditors fifty per cent of their indebtedness.   On April 2, 1921, James A. Goddard filed a petition in this cause setting out that he held two notes executed to him by J. L. Lambert and wife.   They were dated January 7, 1910 and each due twelve months after date, with interest. One note was for $3000 and one was for $500.   He alleged that ·the $500-note had been credited to the amount of $489.96.   Goddard alleged that these notes were secured by a first mortgage on certain lands of Lambert set forth and described in their original bill.   Goddard filed as Exhibit "A" to his petition the trust deed executed by

Lambert and wife and he asked that his indebtedness be declared a preferred claim and be paid in full, together with ten per cent as attorney's fees, out of the proceeds of the sale of the lands set out in said trust deed. Between the dates of filing the original bill in 1915 and April 2, 1921, neither Goddard nor the defendant Lambert had made any appearance in said cause or filed any pleading. On May 31, 1921, Lambert filed an answer and cross-bill to the petition of Goddard. He averred that he was not indebted to Goddard as alleged in the petition. He further alleged that the trust deed to secure the two notes amounting to $3500 was executed to accommodate Goddard and at his request, and that he never received one cent in consideration of signing the trust deed and executing the two notes; that he had never paid one cent to be credited on either of said notes and he knew nothing about the credit of $489.96. Lambert also filed a plea of the statutes of limitations of six and ten years to said notes. By way of cross-bill Lambert alleged that he and Goddard entered into a partnership in August, 1906; that they bought two tracts of land in Blount county, known as the Cates tract and the White tract, paying $10,000 for the first tract and $1700 for the second tract. These tracts of land were bought for their timber and the cross-bill alleged that Lambert and Goddard entered into a partnership to manufacture said timber into lumber and sell same; that Goddard was to handle the financial end of the partnership, keep the books and accounts and furnish the money for the payroll to pay the expenses of sawing the timber into lumber. The bill alleged that after cutting the timber and manufacturing it into lumber and selling the same, Goddard had received the money for the lumber; that these two tracts of land were sold for more than the original purchase price; that they were sold on time and notes taken and that Goddard had collected all of the notes from their grantees; that he had never been able to get a financial statement from Goddard although he had repeatedly requested the same. He prayed for an accounting and judgment for the amount that was due him, alleging that there was a profit of at least $9 per thousand in all of the lumber that he (Lambert) had sawed, and that he had cut and sawed 2,100,000 feet. To this petition Goddard filed a plea of estoppel and also a plea of the statute of limitations of six years.

It appears that after taking part of the proof upon Goddard's petition and Lambert's cross-bill the papers in the cause became lost and the case was delayed. After the delay and supplying the papers and files a number of depositions were taken and the Chancellor ordered a reference to the Clerk and Master to report upon twenty-five different items. It is not necessary to set out the various references referred to the Clerk and Master, but he was to take and state an account between Goddard and Lambert.

About the time the Clerk and Master reported, James A. Goddard died. His death was suggested and admitted and the cause was revived in the name of D. R. Goddard and W. W. Elmore executors of James A. Goddard.

In obedience to the order of reference the Master reported, and on May 23, 1927, the executors moved to have the report of the Master set aside, and that the court order a reference to a Special Master, on the ground that Sam Johnson was acting as receiver and that he (Sam Johnson) had been directed by the court to assist the Clerk and Master in making a report on an order of reference in this cause and that Sam Johnson, who is receiver and a member of the firm of Brown & Johnson, attorneys, filed the answer and cross-bill for the defendant J. L. Lambert as solicitor and receiver. This motion was denied. Thereupon the cause came on to be heard before the Chancellor on the 25th day of July, 1927, upon the petition of James A. Goddard, the answer and cross-bill of J. L. Lambert and the answer thereto; the proof offered in the cause; the report of the Clerk and Master and certain exceptions to the Master's report; and with a few modifications the report of the Clerk and Master was confirmed. The court held that the two notes executed by J. L. Lambert were barred by the statute of limitations and that they were executed for the accommodation and at the request of Goddard, and that Lambert did not receive any consideration for signing the notes and the notes were declared void. The court overruled the plea of the statute of limitations of Goddard to the cross-bill, and his plea of estoppel and rendered judgment against Goddard for the sum of $8698.33. The defendant executors excepted to this decree, prayed and perfected an appeal to this court and have assigned six errors.

The first error insists that the court should not have sustained Lambert's plea of the statute of limitations.

By the fourth error it is insisted that the court was in error in annulling the notes and deed of trust and in holding that they were executed without any consideration.

The second assignment goes to the action of the Chancellor in overruling the plea of estoppel and the third assignment to his action in overruling Goddard's plea of the statutes of limitations.

The fifth challenges the decree rendered, and the amount.

The sixth assignment complains of the action of the Chancellor in not setting aside the report of the Master and to refer the items of reference to a Special Master.

We will dispose of the sixth assignment first.

Learned counsel in his brief for appellant says, "We do not charge intentional wrongs against counsel (meaning Sam Johnson) but on account of his popularity and ability his services were sought in capacities too numerous in this case and we are complaining be-

cause the Chancellor did not decree on the matters we requested."
We find no proof whatever that J. Sam Johnson, the receiver, influenced the Clerk and Master in the report that was made. Johnson was the receiver for Lambert and it was his duty as receiver to assist in recovering all of the assets of Lambert to be administered in the insolvent bill and under the direction of the court and in paying all creditors. Lambert had other attorneys who actively looked after his interest in this matter, and we find no error in the court's refusal to set aside the report that was made upon the showing made in behalf of the exceptions to said report, and the sixth assignment of error is overruled.

The Clerk and Master reported, among other things, that James A. Goddard and cross-complainant John L. Lambert entered into a co-partnership for the purchase of certain lands and the manufacture of lumber from the timber of said lands and the sale thereof; that the two partners paid $11,700 for the two tracts of land; that they sold these two tracts of land for $12,640.20; that the co-partnership borrowed $6684.82; that James A. Goddard kept the books and received the money from the sale of lumber. He also received the money that was borrowed. The Clerk and Master reported from the proof that there was 2,000 feet of lumber on the tract of land when the same was purchased by the co-partnership; he found that the lumber, after its manufacture, had been sold to seven different concerns, naming them, and giving the amount that each concern had purchased, and that this totaled 1,725,000 feet. He also found that lumber had been sold to a firm in Cincinnati and small amounts to various other parties for bridges. He also reported that $500 worth of tan bark was sold from said tracts, in addition to the lumber. He reported that James A. Goddard received from the total operations, including the price for the land, the money borrowed from the banks and from the sale of timber and from the sale of lumber, setting out each item specifically, a total of $53,825.02. He found that James A. Goddard had disbursed the following in behalf of the co-partnership, paying for land, notes to the Bank of Maryville, note to John L. Law, interest on borrowed money; for sundry items, and to John L. Lambert for manufacturing the lumber (payrolls) $16,678, or a total of $36,428.35. He reported that the average net profit to the co-partnership was $9 per thousand feet on the lumber sold. He reported that the co-partnership account at the bank was carried under the name of J. L. Lambert & Company. He further reported that as to the two notes executed by Lambert to Goddard he found that no money was received by Lambert. The Clerk and Master reported that James A. Goddard stated that he did not pay the money to J. L. Lambert but that he paid the money to Charles T. Cates for a tract of land that Lambert bought from

Cates & Bogle. However the Clerk and Master reported that this Cates & Bogle transaction occurred on the 12th day of January 1916, and was for the sum of $2230 cash, while the two notes were executed to Goddard on January 7, 1910. He further reported that James A. Goddard's bank account does not show any money taken out on or about the date the two notes and trust deed were executed. He further reported, as to the $500-note and the credit of $489.96 thereon that Lambert did not pay any of this sum and had no knowledge that said credits were placed on that particular note.

As to the first assignment, in regard to the court's sustaining the statutes of limitations plead by Lambert, this becomes immaterial for the reason that the Master reported and his report was confirmed by the Chancellor and we find proof to sustain the Clerk and Master in so reporting; that these two notes of $3,000 and $500 were executed without any consideration; that Lambert never received anything; that they were executed to accommodate Goddard that he might have some collateral to place with the bank for the purpose of borrowing money.

The first and fourth assignments are overruled.

As to the second and third assignments in regard to the court not sustaining Goddard's plea of estoppel and plea of the statute of limitation: Mr. Goddard kept the books and they were very imperfectly kept. Oftentimes he would charge the firm with a collection as a debit when it should be a credit. His books or ledgers show that he was collecting and paying out money for this co-partnership until the filing of his petition, and even after his petition was filed; and after the issues were made, it appears that Mr. Goddard on behalf of the partnership executed a note to the Bank of Maryville, September 4, 1926, and signed the names Goddard & Lambert for the amount of $1500.

Counsel made the following stipulations: "It is agreed by counsel for all parties that proof may be taken on various claims and counterclaims pertaining to Mr. Goddard and Mr. Lambert the parties hereto, even though barring the debt subsequent to the filing of the present pleadings, and that the pleadings now on file may be amended so as to give either party the benefit of what this proof may bring up and also to bring the pleadings down to date and permitting a decree adjudicating all matters on the date of the trial of the case."

This appears at page 167 of the transcript, and was agreed to while counsel were examining Mr. Goddard when he was testifying as to certain credits and debits.

We find that this was a continuing co-partnership even after the pleadings in the present case were filed, and in the face of the agreement that we have just quoted and under the facts as we find they

exist. Lambert's claim was not barred by the statute of limitation and Goddard's plea of estoppel could not be sustained. The second and third assignments are overruled.

As to the fifth assignment, which is directed at the amount of the judgment, we have a concurrent finding of the Master and the Chancellor as to the amount of money received by James A. Goddard and as to the amount that was paid out by James A. Goddard from the partnership funds. Therefore such finding is conclusive on this court.

A very earnest plea has been made by counsel for Mr. Goddard that Lambert waited until Mr. Goddard had become very old and his mind frail from the infirmities of age before he (Lambert) pressed his claim. Mr. Goddard undertook to keep the books of the firm up until the time he testified. He handled all the cash. There seems to have been considerable profit for the two. What became of it, we are unable to state,—that is, whether they were merged into Mr. Goddard's individual account or invested in property of which there was no record made, we do not know. We think that the failure to pay over what was due Lambert was through error on the part of Mr. Goddard's bookkeeping, and possibly lapse of memory. We are satisfied that there was no wilful intent on the part of Mr. Goddard to hold back that which was due Mr. Lambert. His own figures confused and misled him, and would confuse any co-partnership or institution when money was received from collections and charged to the parties entitled thereto instead of being credited.

In R. C. L., Vol. 20, p. 1011, it is said: "It is one of the ordinary duties of partners to keep true and correct books showing the firm accounts, such books being at all times open to the inspection of all the members of the firm. The duty primarily rests on the managing partner, and he cannot defeat the rights of his co-partner to a settlement and a proper distribution of the assets by failing to keep his accounts. . . .

"As a general rule, every partner has a right to have an accounting of the partnership affairs. . . .

"It is the normal duty of a partner to render an accounting to his co-partnership and a performance of this duty may be enforced by appropriate judicial proceedings."

The fifth assignment of error is overruled.

It results that we find no error in the decree of the Chancellor. All of the assignments are overruled and the decree of the lower court is affirmed.

The cross-complainant Lambert will recover of the executors of J. A. Goddard the amount of the judgment rendered in the lower court, with interest thereon from the date of its rendition and all the costs of the cause, for which execution will issue.

It appears that this appeal is prosecuted upon the oath of the executors in lieu of appeal bond.

Heiskell and Senter, JJ., concur.