Newt FRAZEE, Appellee-Appellant,

v.

Gladstone O. DOBSON,
Appellant-Appellee.

Court of Appeals of Tennessee,
Western Section.

Dec. 20, 1977.

Certiorari Denied by Supreme Court
May 1, 1978.

W. H. Lassiter, Huntingdon, for appellant-appellee.

Frank L. Hollis, Camden, Homer H. Waldrop and David R. Farmer, Jackson, for appellee-appellant.

NEARN, Judge.

The suit was one to dissolve a partnership, obtain an accounting and a proper division and distribution of the assets.

The Chancellor made distribution but to the satisfaction of neither partner and both have appealed. All Assignments of Error are directed ultimately to the division made by the Chancellor.

Newt Frazee and Gladstone O. Dobson were partners in sawmill, land development, and cattle operations. Dobson had some difficulties with the Internal Revenue Service over the payment of his personal taxes. Some partnership assets were in Dobson's name only. Having a penchant for "getting theirs first", the I.R.S. seized assets in the name of Dobson, which included partnership assets. The partners were having serious accounting difficulties prior to I.R.S. involvement, and the I.R.S. seizure provided the immediate impetus for this suit filed by Frazee to dissolve the partnership.

Newt Frazee is a man of very limited formal education. Before entering into a partnership with Dobson, Frazee had operated a sawmill for forty to fifty years.

Dobson was and is the owner of a lumberyard. The original oral deal made about ten or twelve years prior to suit, was that Dobson was to furnish the sawmill and Frazee was to furnish the labor and upkeep of the mill. Net profits were to be split 50–50. Frazee was to receive a minimum wage which was to be drawn against his share of the profit. In other words, first Dobson was to receive the same amount that Frazee had received as wages and then the balance of the profit split 50–50. In the operation of a sawmill it is, of course, necessary to have timber to saw. At first, timber rights were purchased and the timber sent to the sawmill. Then it was decided that it would be better to buy land in fee and cut the timber therefrom. This was done. Then it was perceived that the cleared land would afford good pasture and cattle were purchased and placed upon the cleared land. Then it was decided that some of the land purchased and cleared would suffice as subdivision and building sites. Accordingly, some of the land was subdivided, homes built upon it, sold, and cash and mortgages received therefor. Then the I.R.S. moved in.

From this point on, especially in regard to the bookkeeping between the parties, the proof, to say the least, is confused. The real issue between the parties was one of accounting or bookkeeping. We fully concur with the first sentence of the Chancellor's finding of fact, viz., "The status of this case is such, that it is next to impossible to be certain, as to any given fact in issue." This is so because it would seem that some records were kept not at all, some kept in the head, part of some were with Frazee, part of some were with Dobson, part of some were lost and part of some were burned at about the time the I.R.S. became involved.

Frazee testified that lumber sawn by the mill was delivered to Dobson's lumberyard (Frazee was not a partner in the lumberyard) and Dobson paid to the sawmill only one half the value of sawn lumber "since Dobson was a partner in the sawmill". Frazee paid his own salary and sawmill

expenses from the sawmill account which consisted principally of funds received from Dobson from the sale of lumber to Dobson Lumber Company at one half price plus funds received from scrap lumber sold as firewood. At the end of the year Frazee would owe Dobson an amount equal to what Frazee had drawn as a salary plus half the "profit" on the sawmill books. Frazee began to notice that every year, although he sawed more lumber each year, the sawmill just wasn't making any profit. Not having accounting experience, he never did understand exactly why. Even at time of trial he wasn't sure why it was not all right for Dobson to pay only one half the value of lumber sawn.

Dobson did not deny such was the payment procedure for lumber received by his lumberyard. His explanation of its correctness is just unfathomable to us. Of course, the result of such procedure is a split of at least three fourths to Dobson and at best one fourth to Frazee.

Dobson complained that in spite of all the assistance he gave, Frazee just could not run the sawmill in a profitable manner and he "lost" money every year on the sawmill partnership. With this accounting procedure it would be most difficult for the records of the sawmill to show a "profit" in which Dobson was to share. However, at the price Dobson's Lumber Company was buying lumber, the lumber company, of which Frazee had no interest, ought to have had some nice profits for those corresponding years.

Dobson had kept the records, such as they were, of the cattle and subdivision operations, and debited Frazee's partnership share of the sawmill operation with the expenses of those operations over profits as well as any expenses he felt were owed him by the sawmill operation arising out of transactions between the sawmill and Dobson's lumberyard.

In an attempt to show the amount Frazee was entitled to, plaintiff hired the services of Stanley Donald, C.P.A., to reconcile the partnership accounts. Donald compiled his report from the records of Crawford, the public accountant used by Dobson in preparing tax returns for the Dobson Lumber Company and Dobson individually, tickets that showed the transfer of lumber from the sawmill to the lumber company, copies of ledger sheets provided by Dobson, the work papers and tax returns prepared by Crawford and other miscellaneous records, including Frazee's records of the sawmill operation and the discovery depositions of the parties.

The Chancellor found the Donald report to be correct. He ordered that all partnership assets be sold and that Frazee be first paid therefrom the sum of $40,368.76 as shown owed him by the Donald report plus an additional $316.24 which represented one half the proceeds of an "ASCS" check received by Dobson belonging to the partnership, but which he admitted putting to his own personal use. The total preference allowed by the Chancellor was $40,685.00.

The Chancellor disallowed a preference claim of $38,274.33 of Dobson.

The record shows beyond doubt that the Chancellor based his judgment of the amount due Frazee upon the testimony and accounting report of C.P.A. Stanley Donald. The first seven Assignments of Error of appellant Dobson are bottomed on a rejection of the Donald report by this Court. On appeal various and sundry reasons are now given for the rejection of the Donald report. At trial, the report was objected to on only one ground, viz.: "I object to the report and his testimony because of the statement on the first page of the report which qualifies everything and says it was not correct". The objection was overruled. The statement alluded to in the objection is as follows:

The accompanying Balance Sheet and related schedules are not intended to be represented as presenting a true and accurate statement in every detail. The incompleteness of records and supporting data necessitates that I disclaim and [sic] opinion as to the fairness of the presentations in the Balance Sheet and supporting schedules. The only representation made is that the accompanying Balance Sheet

and supporting schedules reflect the results of analysis, review and adjustments in conformity with generally accepted accounting principles.

We believe the Trial Court acted properly in overruling the objection on the stated grounds. The accountant's statement is to the effect that he did the best he could with the information available. We know of no one who can say more. The deficiency in accounting records we find to be largely the fault of Dobson and he should not profit thereby. § 60, 61 Gibson's (5th Edition); see *Brady & Edmondson v. Lambert* (1928 E.S.) 7 Tenn.App. 494. Further, Donald's report greatly relied upon the books and records of Harold Crawford, public accountant, who served as accountant for the Dobson-Frazee ventures as well as Dobson Lumber Company. Crawford's figures were evidently accepted by Dobson prior to litigation, but were attempted to be discredited by Dobson at trial on the basis that Crawford only prepared tax returns and "he was just an accountant, he would come by every two or three months and picked up the checkbooks that's all." However, it appears to us such was more than anyone else did.

We find that the Donald report was based upon the very best evidence obtainable and was admissible.

Other objections to the admission of the report we find come too late. It should be pointed out that Dobson has changed counsel since the trial of this case. Some of the grounds now forming the basis of objections appear to us as grounds that were waived below.

The first seven Assignments of Error are overruled.

The eighth Assignment of Error is that the Chancellor erred in not awarding Dobson a preference of $38,274.33. We find the Assignment to be without merit. The claim arises from an accounting based on documents furnished an accountant by Dobson, which documents were evidently prepared for the purposes of trial. In Dobson's testimony he claims to have loaned the saw-mill $15,000.00 and introduced a check, the original of which is in the record, in that amount to support the claim. We cannot help but note that our examination of the check fails to reveal that it has ever been deposited or negotiated with any bank.

The result is all Assignments of Error of appellant Dobson are overruled.

Frazee's first Assignment of Error is that the Chancellor erred in not awarding Frazee an additional salary for services rendered in addition to the meager sums he drew over the years. As testified by Frazee, that was not the deal. The Assignment is overruled.

The remaining Assignments of Error, in essence, fault the Chancellor for not awarding Frazee more than he did based upon other "equitable principles". We are of the opinion that the Chancellor did a creditable job in doing equity and settling accounting problems between the parties with what he had.

All of Frazee's Assignments of Error are overruled.

Costs of Appeal are assessed equally between the parties.

The cause is remanded for any further proceedings necessary to effect the Chancellor's decree which is affirmed.

Chancellor William H. Inman, by designation of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Judge Paul R. Summers.

Done at Jackson in the two hundred and second year of our Independence and in the one hundred and eight-second year of our Statehood.

MATHERNE, J., and WILLIAM H. INMAN, Special Judge, concur.